| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | FOR ONLINE PUBLICATION ONLY |

DAMION HENRY,

        Petitioner,

  - versus -

WILLIAM LEE,

        Respondent.

MEMORANDUM
AND ORDER
12-CV-5483 (JG)

A P P E A R A N C E S:

  DAMION HENRY
    #06-A-3244
    Green Haven Correctional Facility
    P.O. Box 4000
    Stormville, New York 12582
  By: *Petitioner, pro se*

  CHARLES J. HYNES
    District Attorney, Kings County
    350 Jay Street, Renaissance Plaza
    Brooklyn, New York 11201
  By: Anthea Hemery Bruffee
    *Attorney for Respondent*

JOHN GLEESON, United States District Judge:

    Damion Henry, who is currently incarcerated at Green Haven Correctional Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After a jury trial in the Supreme Court of New York, Kings County, Henry was convicted of one count of criminal possession of a weapon in the second degree and three counts of menacing in the second degree. Henry was sentenced (as modified on appeal) to concurrent terms of imprisonment of 15 years on the weapon possession charge and one year on the menacing charge, to be served consecutively to a 25-year sentence he was already serving for a prior conviction for attempted

1

murder. Henry now seeks habeas relief from his conviction and sentence on the following grounds: (1) he was denied effective assistance of counsel based on trial counsel's failure to request a *Frye* hearing with respect to the admissibility of the results of Low Copy Number ("LCN") DNA testing; (2) he was denied due process based on the failure of the trial court to consider the reliability and admissibility of LCN DNA testing; and (3) his sentence violated the Eighth Amendment. *See* Pet. at 1-3, ECF No. 1. For the reasons stated below, the portion of Henry's petition based on the claim for ineffective assistance of counsel is stayed and held in abeyance to allow Henry to exhaust his state court remedies before seeking relief in federal court.

## BACKGROUND

A.   *The Offense Conduct*

The state presented evidence of the following facts at trial: At approximately 4:30 a.m. on January 21, 2006, Henry attempted to enter the Ragtop Lounge, a nightclub in the East Flatbush neighborhood of Brooklyn. Tr. at 33-34.[1] He had a loaded 9-millimeter Uzi firearm in his waistband. Two bouncers searched Henry's waistband, and when they felt the gun they refused to allow Henry to enter the club. Tr. at 34-37. Henry became agitated and threatened to shoot the bouncers if they continued to refuse his entry. Tr. at 130. From the sidewalk a short distance from the entrance, Henry took the gun out of his waistband, cocked it, pointed it at the bouncers, and fired at least one shot. A bullet struck the door of the nightclub. Tr. at 130-31. Henry then began running away from the club.

When Henry was only two or three storefronts from the club, Sergeant Ajay Kapur and Officer Andrew Rydlewski, who had been summoned by the bouncers, exited their vehicles, drew their guns, and told him to stop. Henry started to run faster, and as the police

---

[1]   Citations to the trial transcript are preceded by "Tr."

officers chased him, he pointed his gun over his shoulder and fired several shots at the officers. The officers returned fire, injuring Henry and stopping him. Tr. at 220-23, 311-13.

Henry was arrested and charged with multiple counts of attempted murder, attempted aggravated murder, attempted assault, attempted aggravated assault, criminal possession of a weapon, menacing, and reckless endangerment.

B.   *Trial Proceedings*

During trial, the prosecution introduced DNA evidence found on the Uzi that was used to fire shots at the police officers. Kira Keblish, a supervisor at the forensic biology department of the New York City Office of Chief Medical Examiner, described the "Low Copy Number" ("LCN") DNA testing procedure, which was used to identify Henry's DNA on the Uzi. The LCN testing procedure was used to amplify the very low amount of DNA found on the weapon, 160 picograms.[2] Keblish, who performed the DNA analysis, testified that the amplification was repeated three times, and that the DNA profile is used only if the results match at least two of the three times. Keblish concluded that the DNA taken from the Uzi matched Henry's DNA. Tr. at 517-35.

During cross-examination, defense counsel elicited testimony from Keblish that LCN DNA testing was not a traditional, widely-used DNA testing method like Polymerase Chain Reaction and Short Tandem Repeat ("PCR" and "STR") testing but rather a newer method. Keblish testified that under the traditional PCR and STR testing procedures, her laboratory could test DNA samples of as low as .15 nanograms. Keblish acknowledged that the FBI did not use LCN DNA testing and that she did not know of any other lab in the United States that used the LCN DNA testing procedure. Tr. at 535-67.

---

[2]   One picogram is one thousand times smaller than one nanogram, which is one-billionth of a gram.

3

After a jury trial, Henry was convicted of one count of criminal possession of a weapon in the second degree and three counts of menacing in the second degree. He was acquitted of all other charges.

C. *Direct Appeal*

On direct appeal, Henry's appellate attorney, Lynn W.L. Fahey, argued that Henry's trial attorney was constitutionally ineffective for failing to request a *Frye* hearing despite being aware that the LCN DNA testing procedure was a new, non-traditional technique. *See* Def's App. Br., ECF No. 5-1. Fahey also argued that the imposition of the maximum 15-year sentence for criminal possession of a weapon in the second degree, to run consecutively to Henry's pre-existing 25-year sentence, was excessive. The Appellate Division observed that to the extent the ineffective assistance claim was premised upon the issue of whether LCN DNA testing is generally accepted in the scientific community, it was unreviewable because the issue was a "matter outside of the record." *People v. Henry*, 914 N.Y.S.2d 288, 289 (2d Dep't 2011). The court added that to the extent that the ineffective assistance claim could be reviewed through the record, Henry was not deprived the effective assistance of counsel. *Id.* On the excessive sentence claim, the court held that "[t]he sentence imposed upon the defendant's conviction of criminal possession of a weapon in the second degree was not excessive." *Id.*

Henry's appellate lawyer sought leave to appeal the decision to the New York Court of Appeals, and on August 4, 2011, Associate Judge Susan Read of the Court of Appeals denied leave. *People v. Henry*, 17 N.Y.3d 817 (2011).

D. *The Present Petition*

Henry timely filed this petition on October 17, 2012, claiming that he is entitled to a writ of habeas corpus under 28 U.S.C. § 2254 on the three grounds set forth above.

4

In his reply to the government's opposition memo, Henry informed the Court that he had filed a § 440.20 motion to set aside his sentence with the New York Supreme Court, Kings County on March 22, 2013.  *See* Pet'r's Reply at 12, ECF No. 8 at 1.  The basis of that pending § 440.20 motion is that the sentence imposed constituted cruel and unusual punishment in violation of the Eighth Amendment.  *See* Aff. in Supp. of Mot. Set Aside Sentence at 1, ECF No. 8 at 20.

I heard oral argument of the petition on April 16, 2013.  Henry appeared by videoconference from the facility in which he is incarcerated.

## DISCUSSION

A.   *Standard of Review*

    1.   *Exhaustion and Procedural Default*

The exhaustion requirement, codified at 28 U.S.C. §§ 2254(b) and (c), obligates a federal habeas petitioner to exhaust state judicial remedies before seeking relief from a federal court.  To exhaust state remedies, a petitioner must "fairly present" his federal constitutional claims to the highest state court with jurisdiction over them.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation marks and alterations omitted); *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir. 1981) (*en banc*).  This requirement, which "springs primarily from considerations of comity" between the federal and state systems, affords the state system "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Daye*, 696 F.2d at 191.

When a petition presents both exhausted and unexhausted claims, a federal court may in appropriate circumstances stay the petition and hold it in abeyance to give the petitioner the opportunity to exhaust all of his claims.  *See Rhines v. Weber*, 544 U.S. 269, 276 (2005).  However, the court should do so only where it "determines there was good cause for the

petitioner's failure to exhaust" and the claim is not "plainly meritless." *Id*. A federal court must otherwise dismiss a mixed petition in its entirety on exhaustion grounds, *see Rose v. Lundy*, 455 U.S. 509 (1982), or allow the petitioner to amend the petition to withdraw the unexhausted claims, *Rhines*, 544 U.S. at 278. A federal court may also deny a claim on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); *see also Pratt v. Greiner*, 306 F.3d 1190, 1196-97 (2d Cir. 2002).

Even if a claim in a federal habeas petition has not been exhausted, a federal court may deem it exhausted if it determines there are no avenues available in the state judicial system for reviewing the claim. *See* 28 U.S.C. §§ 2254(b)(1)(A)-(B) ("An application for a writ of habeas corpus . . . shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State; or there is an absence of available State corrective process. . . ."); *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an absence of available State corrective process if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile."). But this "apparent salve . . . proves to be cold comfort to most petitioners" because the finding that the claims can no longer be exhausted requires the federal court to deem the claims procedurally defaulted. *Id*.; *Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003). A federal habeas court may review a procedurally barred claim on the merits only if the petitioner can demonstrate cause and actual prejudice, or that a failure to consider the claim would result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

    2.    *The Adequate and Independent State Ground Doctrine*

6

A federal habeas court may not "review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 131 S.Ct. 1120, 1127 (2011) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)) (internal quotation marks and alterations omitted); *Harris v. Reed*, 489 U.S. 255, 261-62 (1989). The adequate and independent state ground doctrine, like the exhaustion requirement, is "grounded in concerns of comity and federalism." *Coleman*, 501 U.S. at 730. Without this doctrine, "habeas would offer state prisoners whose custody was supported by independent and adequate state grounds . . . a means to undermine the State's interest in enforcing its laws." *Id*. at 730-31.

A state procedural default qualifies as an adequate and independent ground and will preclude federal habeas review "unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice."[3] *Harris*, 489 U.S. at 262; *accord Coleman*, 501 U.S. at 750. This precept holds true any time "a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990); *accord Harris*, 489 U.S. at 264 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding."); *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996). Thus, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent state ground doctrine "curtails reconsideration of the federal issue on federal habeas." *Harris*, 489 U.S. at 264 n.10; *but see Lee v. Kemna*, 534 U.S.

---

[3] When the independent and adequate state ground is a state procedural default, the doctrine gives teeth to the exhaustion requirement. For without the independent and adequate state ground doctrine, "habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court." *Walker*, 131 S.Ct. at 1127 (quoting *Coleman*, 501 U.S. at 732).

7

362 (2002) (recognizing that "[t]here are . . . exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question").

### 3.   *AEDPA Deference to State Court Decisions on the Merits*

A federal habeas court may grant habeas relief "with respect to a[ ] claim that was adjudicated on the merits in State court proceedings" only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding." 28 U.S.C. §§ 2254(d).[4] In addition, a federal habeas court must presume all state court factual determinations to be correct, unless the petitioner rebuts the findings by clear and convincing evidence. *Id*. § 2254(e)(1). AEDPA's deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether it gives reasons for its determination or refers to federal law in its decision. *See Harrington v. Richter*, 131 S. Ct. 770, 785 (2011); *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A

---

[4]   This limitation on relief is frequently referred to as "AEDPA deference." *E.g.*, *Cullen v. Pinholster*, 131 S. Ct. 1388, 1410 (2011); *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2265 (2010); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003).

decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* Elaborating on the "unreasonable application" standard, the Supreme Court has held that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Richter*, 131 S. Ct. at 786.

B.      *Henry's Claims for Relief*

        1.      *Ineffective Assistance of Counsel*

Henry claims that he was deprived the effective assistance of counsel because his trial counsel failed to request a *Frye* hearing regarding the general acceptance and reliability of the LCN DNA testing method. Pet. at 3; *see Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).[5] Henry also claims ineffective assistance of counsel because trial counsel failed to challenge the weight and sufficiency of the LCN DNA evidence. Pet. at 3. At the time Henry filed this petition, he had raised this claim on direct appeal but had not raised it in a collateral state proceeding.

        The claim is unexhausted for two reasons. First, the Appellate Division declined to rule on the merits of the claim to the extent that the claim was based on defense counsel's failure to request a *Frye* hearing. Specifically, the Appellate Division stated that "the issue of whether LCN DNA testing is not generally accepted in the scientific community cannot be reviewed on direct appeal." *Henry*, 917 N.Y.S.2d at 289. It is true that the court held that "[t]o

---

[5] New York has not adopted the standard found in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) in determining the admissibility of novel scientific evidence, but rather continues to adhere to the *Frye* test. *Zito v. Zabarsky*, 812 N.Y.S.2d 535 (2d Dep't 2006); *see People v. Wernick*, 89 N.Y.2d 111, 115 (N.Y. 1996); *People v. Wesley*, 83 N.Y.2d 417, 423 n.2 (N.Y. 1994).

9

the extent that the defendant's contention of effective assistance of counsel [*could*] be reviewed, the record reveals that the defendant was not deprived of the effective assistance of counsel under applicable state and federal standards," *id.*, but, a "contingent observation" by the state court as to the merits of a petitioner's claim is not an "adjudication on the merits" for purposes of AEDPA review.  *See Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007).  Thus, to the extent that Henry's claim rested upon trial counsel's failure to request the *Frye* hearing, the Appellate Division declined to rule on the merits.

Second, Henry did not "fairly present" the claim in a collateral post-conviction proceeding.  New York Criminal Procedure Law ("N.Y.C.P.L.") § 440.10 allows defendants to challenge their convictions based on outside-the-record matters that could not have been raised on direct appeal.  As the Appellate Division emphasized in its decision, to the extent that Henry's ineffective assistance of counsel claim hinged upon the general acceptance and reliability of the LCN DNA testing method in the scientific community, the claim could not be reviewed on direct appeal, since it would require the court to resort to information outside the trial record.  Because Henry did not raise this claim in a collateral proceeding, it remains unexhausted.

Even though Henry's ineffective assistance of counsel claim remains unexhausted before this court, he has not procedurally defaulted for the purposes of federal habeas review.  A petitioner has procedurally defaulted his claim if he has "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  Under New York law a defendant waives a claim for collateral review if he failed to argue the claim on direct appeal despite a sufficient record.  *See* N.Y.C.P.L. § 440.10(2)(c).  However, because the Appellate Division ruled the record insufficient to

10

consider his claim for ineffective assistance of counsel, Henry still has the opportunity to raise the claim in a collateral post-conviction proceeding.

When presented with a "mixed" petition, a habeas court may, in limited circumstances, stay the petition to allow petitioner to return to state court and exhaust his unexhausted claims. *Rhines*, 544 U.S. at 273-274. To grant a stay, the habeas court must find that there was "good cause" for the petitioner's failure to exhaust his claims and that the unexhausted claims are not "plainly meritless." *Rhine*, 544 U.S. at 278. Where a district court deems a stay inappropriate, the Supreme Court has directed that the petitioner be allowed the opportunity to "delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Id.*

The Supreme Court and the Second Circuit have yet to define what constitutes "good cause" under *Rhines*. However, the *Rhines* Court specified that a district court should not stay a petition if the petitioner is engaging in "abusive litigation tactics or intentional delay." *Id.* at 278. The Supreme Court has also suggested that "reasonable confusion" about state law provides grounds for a stay. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) ("A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court."). District courts in this circuit have looked to both the more forgiving "reasonable confusion" standard found in *Pace* and a more rigorous standard that looks to objective external factors. *See McCrae v. Artus*, No. 10-CV-2988 (RMM), 2012 WL 3800840 at *8-9 (E.D.N.Y. Sep. 2, 2012) (collecting cases); *Ramdeo v. Phillips*, No. 04-CV-1157 (SLT), 2006 WL 297462 at *5-6 (E.D.N.Y. Feb. 8, 2006) (finding that good cause "must arise from an objective factor external to the petitioner which cannot fairly be attributed to him or her."). Regardless of the approach, "good cause" was "not intended to impose the sort of

11

strict and inflexible requirement that would trap the unwary *pro se* prisoner." *Rhines*, 544 U.S. at 279 (Stevens, J., concurring) (quotation marks omitted).

I find that the circumstances of Henry's case created "reasonable confusion" about his claims and their viability. Henry has demonstrated that he is capable of pursuing relief through collateral state proceedings. In his request for extension of time to file his reply, he stated that he was in the process of filing a § 440 motion and he thereafter filed a § 440.20 motion raising his federal claim for cruel and unusual punishment.[6] *See* Mot. Extension of Time to File Pet'r's Reply at 2, ECF No. 7. It was unclear from the papers submitted in support of the petition why Henry did not include in his § 440 motion his ineffective assistance of counsel claim. However, it became clear to me at oral argument that the nuances of the Appellate Division's ruling caused confusion on Henry's part regarding the continued viability of this claim. *See Whitley v. Ercole*, 509 F.Supp.2d 410, 420 (S.D.N.Y. 2007) (finding good cause where a compound ruling by the Appellate Division "could have caused a layperson reasonably to believe that the court had fully adjudicated [his] claim on the merits" and where "[a] trained lawyer easily could be confused by the Appellate Division's rulings, and be troubled by having to choose between state and federal court for the proper course of postconviction relief"). Specifically, he was confused by language that conveyed to a lawyer that the Appellate Division had passed on only *part* of Henry's claim, but that did not convey so to a layperson. Henry was clearly confused when he was asked to articulate a reason for his failure to pursue the ineffective assistance claim through a § 440 motion. Despite my attempt to clarify the matter by reading from the Appellate Division's decision, Henry remained understandably confused, remarking that it seemed like, to use his words, language from another country. OA Tr. 14-15. In short,

---

[6] Henry stated in his request for extension of time to file his reply that he was in the process of filing a § 440.10 motion but ultimately filed a § 440.20 motion.

Henry's confusion was due mainly to the nuanced language of the state court's ruling; there is nothing to suggest that he intentionally delayed the resolution of his claims. *Cf. Whitley*, at 421 ("It is hard to imagine what incentive Petitioner, a non-capital prisoner, would have to delay the adjudication of his petition."). Thus, I find that Henry has demonstrated good cause for his failure to exhaust this claim.

As to whether Henry's claim is "plainly meritless," I conclude that more factual development is needed to determine whether trial counsel's failure to request a *Frye* hearing constituted deficient performance and, if it did, whether it could have affected the outcome of Henry's trial. To establish a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must show (1) that his counsel supplied deficient representation, and (2) that the petitioner suffered prejudice as a result of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To establish deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 687). To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In his opposition to Henry's habeas petition, respondent argues that Henry was not deprived of effective assistance of counsel because Henry's trial counsel sought the opinion of an independent expert on forensic DNA analysis in crafting questions for cross-examination. *See* Resp't's Mem. Opp'n at 3, ECF No. 6 at 7. These questions were used on cross-examination in an attempt to raise a reasonable doubt in the jurors' minds regarding the reliability of LCN

DNA testing.  Respondent appended a copy of the affirmation from the expert, which showed the substantial amount of time the expert spent in preparing for these consultations.  *See* Resp't's Mem. Opp'n at 24-27.  Though the prosecutor offered this evidence to the state court on Henry's direct appeal, the state court refrained from considering it, holding instead that Henry's claim for ineffective assistance of counsel could not be reviewed because it was a matter outside of the record.  *See Henry*, 914 N.Y.S.2d at 289.

This evidence is certainly relevant to evaluating Henry's claim of ineffective assistance of counsel, but because much of the claim hinges on the failure of trial counsel to request a *Frye* hearing, it would be premature to consider the merits of this claim without affording the state courts an opportunity to do so in the first instance.  Neither the Supreme Court nor the Second Circuit has announced a clear test or framework for evaluating whether an unexhausted claim is "plainly meritless."  *Gordon v. Bradt*, 09-CV-4383 (RJD), 2012 WL 4344168 at *2 (E.D.N.Y. 2012).  Nevertheless, "[t]he various formulations bandied about in the Second Circuit's district courts have the common thread of disposing of unexhausted claims that are unquestionably meritless."  *Keating v. New York*, 708 F.Supp.2d 292, 299 n.11 (E.D.N.Y. 2010).  Where it is unclear whether a claim is patently frivolous, federal habeas courts should be guided by the rationale that "state courts must, as a matter of comity, be afforded the opportunity to first pass upon any habeas claim that is at least potentially meritorious."  *Id.*

Claims of ineffective assistance based on a failure to request a *Frye* hearing on LCN DNA testing do not appear to have been presented to federal courts in this district.  While a few state trial courts in New York City have recently ruled on the *Frye* admissibility of LCN DNA evidence, *see People v. Megnath*, 898 N.Y.S.2d 408 (Sup. Ct. Queens Cnty. 2010), *People v. Garcia*, 2013 WL 690600 (N.Y. Sup. Ct. Bronx Cnty. Feb. 13, 2013), the state appellate courts have yet to settle the issue.  Without any firm guidance from the state courts as to the factual

14

basis for the general acceptance and reliability of LCN DNA testing, I conclude that it would be premature for me to evaluate the potential merits of Henry's ineffective assistance claim. Proper resolution of that claim depends on a further development of the record, as the Appellate Division stated on Henry's direct appeal.

Because Henry can pursue this issue in a collateral proceeding in state court through a § 440.10 motion, a stay and abeyance of his habeas petition is proper while he exhausts this claim in state court. I conclude that the claim is not plainly meritless, and that Henry has shown good cause for his failure to exhaust. I therefore direct that Henry's petition be stayed and held in abeyance as to this claim, in order to give Henry an opportunity to exhaust the claim in state court before I render a decision.

2.    *Due Process*

Henry also argues that his Fourteenth Amendment right to due process was violated, referring to LCN DNA testing as an "unchallenged scientific method" which "effectively denied" his due process rights. Pet. at 3. Construed liberally, Henry's due process claim alleges that he was denied a fair trial because he was denied the right to present a defense, and that he was precluded from presenting a complete defense because the trial court failed to consider the factual basis for the reliability and admissibility of LCN DNA testing. Henry did not raise this claim in his direct appeal or in any collateral proceeding, leaving the claim unexhausted. Notwithstanding these exhaustion issues, the claim is meritless.

The federal Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, whether this right is rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). The opportunity to be heard is an essential component of procedural fairness. *Id.*

15

But a defendant's right to present a defense is a right to present his *own* witnesses and evidence. "The Supreme Court has described this right as follows: 'The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.'" *United States v. Williams*, 205 F.3d 23, 29 (2d Cir. 2000) (quoting *Taylor v. Illinois*, 484 U.S. 400, 409 (1988)). The right to present a defense is not implicated by a trial court's failure to hold a full evidentiary hearing on the reliability of scientific evidence like DNA testing, as was the case here.

The trial court did not exclude any of Henry's own witnesses or evidence. Henry presented the testimony of Detective James McCormick and Carol Meyers, a criminalist for the New York City Police Department. Thus, he was not denied his right to present a defense or his right to a fair trial. Because I find that this claim fails on the merits, there is no need to address the procedural consequences for Henry's failure to exhaust the claim.

    3.    *Excessive Sentence*

Finally, Henry argues that the sentence imposed upon his conviction was so excessive that it violated the Eighth Amendment. I find this claim meritless, since the Appellate Division's ruling was not an unreasonable application of clearly established federal law.

I first find that Henry exhausted his state court remedies despite his failure to raise an Eighth Amendment claim explicitly during his direct appeal. A federal habeas court must consider several factors in determining whether a petitioner has properly raised a federal claim in state court:

> (a) reliance on pertinent federal cases employing constitutional analysis; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the

16

> Constitution; or (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc).  Furthermore, even when a petitioner has raised only state claims in state court, "[w]here state and federal claims share the same legal standard," such that the claims are "virtually identical," a petitioner has exhausted the federal claim.  *Jackson v. Edwards*, 404 F.3d 612, 620-621 (2d Cir. 2005).

On his direct appeal, Henry raised a claim for excessive sentence based on state law, citing no federal cases, only state cases.  None of these state cases employed federal constitutional analyses.  Likewise, the Appellate Division cited only a state case in the portion of its decision dealing with Henry's excessive sentence claim.  An examination of that state case, *People v. Suitte*, 455 N.Y.S.2d 675 (2d Dep't 1982), reveals no Eighth Amendment analysis or other federal constitutional analysis.  Despite Henry's failure to bring a federal claim clearly, his claim of excessive sentence in state court calls to mind the federal Constitution's prohibition of cruel and unusual punishment.  The legal standards for proportionality in federal and state excessive sentence claims are so similar as to render them "virtually identical."  Both consider the primacy of the legislature and other objective and legitimate penological factors.  *See Ewing v. California*, 538 U.S. 11, 23 (2003) (identifying four principles of proportionality review); *Suitte*, 455 N.Y.S.2d at 680 ("The penalty to be imposed is a matter for the trial court's broad discretion within the limits imposed by the Legislature").  I find Henry to have properly presented his federal claim before state court and to have exhausted his state court remedies.

The Appellate Division ruled that Henry's argument had no merit: "The sentence imposed upon the defendant's conviction of criminal possession of a weapon in the second degree was not excessive."  *Henry*, 914 N.Y.S.2d at 289.  Because the Appellate Division denied

17

this claim on the merits, I may grant habeas relief only if its determination was contrary to or involved an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1).

I find that the Appellate Division's decision was not contrary to and did not involve an unreasonable application of clearly established federal law. Henry claims that the imposition of a 15-year sentence for weapon possession consecutively to his previous 25-year sentence constitutes cruel and unusual punishment. According to clearly established federal law, the 15-year sentence itself was not cruel and unusual, and neither was the imposition of that 15-year sentence to run consecutively to his previous 25-year sentence.

Under well-settled federal constitutional law, there is no claim for cruel and unusual punishment where the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only "extreme sentences that are grossly disproportionate" to the crime. *Ewing v. California*, 538 U.S. at 23 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)). "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980). Henry's challenge is no exception. Under New York law, a person convicted of second-degree criminal possession of a weapon, a class C violent felony offense, may be sentenced to a determinate sentence of from three and one-half to fifteen years. *See* N.Y. Penal L. §§ 70.02(1)(b), 70.02(3)(b). Because Henry was sentenced to fifteen years, which was within the authorized statutory range, his sentence did not violate the Eighth Amendment.

As to the consecutive imposition of his sentence, clearly established federal law holds that the imposition of consecutive sentences violates the Eighth Amendment only under extraordinary circumstances. *See United States v. Jaramillo-Montoya*, 834 F.2d 276, 279 (2d

18

Cir. 1987). In *Jaramillo-Montoya*, the Second Circuit referred to a variety of factors to determine whether the imposition of a consecutive sentence rises to the level of extraordinary circumstances, including the degree of a defendant's involvement in the crime, the defendant's demonstration of remorse, *the sentence supported by the law*, and the defendant's eligibility for parole. *See id.* at 279-280 (italics added). New York law allows a sentencing court to impose sentences to run consecutively with respect to each other and any undischarged terms of imprisonment imposed at a previous time. *See* N.Y. Penal L. § 70.25(1). It can hardly be said that Henry's case involves extraordinary circumstances when the legislature permits consecutive sentences for separate acts. *See Salcedo v. Artuz*, 107 F.Supp.2d 405, 415 (S.D.N.Y. 2000). Absent extraordinary circumstances, "Eighth [A]mendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence." *United States v. Aiello*, 864 F.2d 257, 265 (2d Cir. 1988). Because each of Henry's sentences were within the ranges authorized by New York law, and because New York law also authorized the imposition of consecutive sentences, his Eighth Amendment claims have no merit under established federal law.

Therefore, the Appellate Division's ruling was not contrary to clearly established federal law, nor was it an unreasonable application of it. The sentence imposed upon Henry's conviction for weapon possession was not excessive, and neither was it cruel and unusual.

## CONCLUSION

For the reasons stated above, the portion of Henry's petition based on the claim for ineffective assistance of counsel is stayed and held in abeyance to allow Henry to exhaust his state court remedies before seeking relief in federal court. I see no reason to delay ruling on the remainder of his claims, which I find to be meritless. Henry is directed to file within 30 days a state motion to vacate judgment pursuant to N.Y.C.P.L. § 440.10 (or a motion to supplement his

pending § 440 motion) on the ineffective assistance ground at issue in this petition. Henry must also notify this court within 30 days of the conclusion of the state court proceeding, at which time I will lift the stay in this case. *See Zarvela v. Artuz*, 254 F.3d 374, 380-382 (2d Cir. 2001) (holding that 30 days is a reasonable period of time in which to initiate state collateral proceedings and reinitiate federal proceedings following the state court decision).

        So ordered.

        John Gleeson, U.S.D.J.

Dated: May 8, 2013
      Brooklyn, New York